IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------x
In re
MIDWAY GAMES INC., *et al.*, [1]

                      Debtors.
---------------------------------------------------------------------x
MIDWAY GAMES INC., MIDWAY AMUSEMENT
GAMES LLC,

                      Plaintiffs,

   -  against —

CATHERINE SHANNON, DIRECTOR OF THE STATE OF
ILLINOIS, DEPARTMENT OF LABOR, *et al.*,

                      Defendants.
---------------------------------------------------------------------x

Chapter 11

Case No. 09-10465 (KG)
(Jointly Administered)

Adv. Proc. No. 09-52288 (KG)

Responses Due: 4/25/10 @ 5:00 P.M.
Hearing Date:  N/A

## PLAINTIFFS' MOTION FOR CLARIFICATION OF OPINION DENYING DEFENDANTS' MOTIONS TO DISMISS

The plaintiffs, debtors and debtors in possession in the above-captioned bankruptcy cases (the "Debtors"), hereby submit, pursuant to Federal Rule of Civil Procedure 60(a), made applicable by Federal Rule of Bankruptcy Procedure 9024, their Motion for Clarification of Opinion Denying Defendants' Motions to Dismiss (the "Motion"), and, in support thereof, state as follows:

---

[1]    The Debtors are: Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

1

## BACKGROUND

1. On October 28, 2009, the Debtors commenced this adversary proceeding by filing a complaint (the "Complaint") [Adv. Dkt. No. 1]. On December 14, 2009, defendant Catherine Shannon, as Director of the State of Illinois, Department of Labor and the individual former employee defendants (the "Former Employee Defendants") filed their respective motions to dismiss [Adv. Dkt Nos. 8 and 10] (the "Motions to Dismiss"). On January 8, 2010, the Debtors filed their Answering Brief in Opposition of the Motions to Dismiss [Adv. Dkt. 18] (the "Answering Brief"). Oral argument on the Motions to Dismiss was held on January 26, 2010.

2. On March 25, 2010, the Court entered its Opinion Denying Defendants' Motions to Dismiss (the "Opinion") [Adv. Dkt. No. 26]. The Court held that the Debtors stated a valid claim for application of the automatic stay "to bar further investigation and commencement of a lawsuit by IDOL and the Individual Defendants for the Wage Act Claims." *See* Opinion at 13.

3. On February 23, 2010, the Debtors filed their proposed Joint Chapter 11 Plan of Liquidation (as it may be amended, the "Plan") [Dkt. No. 888], and related disclosure statement (as it may be amended, the "Disclosure Statement") [Dkt. No. 889]. On March 23, 2010, the Court entered an order approving the Disclosure Statement. On March 26, 2010, the Debtors filed a revised Plan [Dkt. No. 936], and the related Disclosure Statement [Dkt. No. 937]. On April 2, 2010, the Debtors caused the mailing of the Court approved solicitation materials with respect to the Plan.

## RELIEF REQUESTED

4. Pursuant to Federal Rule of Civil Procedure 60(a), as made applicable by Federal Rule of Bankruptcy Procedure 9024, the Debtors seek clarification of certain portions of the Opinion.

5. Pages 10 and 14 of the Opinion state that, both at oral argument and in the briefing, the Debtors made representations to the Court that, pursuant to the terms of the proposed Plan, the claims filed by the Individual Defendants would be paid in full. *See* Opinion at 10, 14. While the Debtors do not believe that these portions of the Opinion were critical to the Court's ultimate decision, the Debtors wish to apprise the court that these portions of the Opinion are not consistent with the record on the Motions to Dismiss.

6. If the proposed Plan is confirmed, holders of allowed priority unsecured claims will receive payment in full, and holders of allowed non-priority unsecured claims will receive a pro rata recovery under the proposed Creditors' Committee Settlement. *See also* Compl. ¶ 13; Answering Brief at 5.

7. Thirteen of the fifteen Former Employee Defendants have filed proofs of claim for unpaid wages, totaling $111,759.59. *See* Opinion at 4; Answering Brief at 5. Of the $111,759.59, only $91,869.39 is asserted as priority status.[2] *See* Opinion at 4, n 7; Answering Brief at 5. Thus, to the extent that the claims of the Former Employee Defendants are allowed, they are expected to receive full recovery on the priority portion of their claims, and a pro rata recovery on the unsecured non-priority portion of their claims. *See* January 26, 2010 Transcript at 11, 27-28, 38, 59 (relevant pages attached hereto as Exhibit "1"). The Debtors wish to apprise

---

[2] The claims review and reconciliation process as to all filed proofs of claim and administrative expense claim requests is ongoing. All rights, claims, arguments, positions, and defenses asserted by all claimants, the Debtors, the Creditors' Committee, and other parties in interest are expressly reserved.

900200.00001/40187502v.3

the Court of the foregoing in the event the Court believes the Opinion should be corrected or clarified.

## NOTICE

8. Notice of this Motion has been provided to: (a) the Office of the United States Trustee; (b) counsel to the Creditors Committee; and (c) the Defendants or their known counsel. In light of the relief requested, the Plaintiffs submit that no further notice need be given.

Dated: April 8, 2010

**BLANK ROME LLP**

*Michael DeBaecke*

Michael D. DeBaecke (No. 3186)
Steven L. Caponi (No. 3484)
1201 North Market Street
Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6412

-and-

Jeffrey N. Siegel
Pamela E. Flaherty
Marc Richards
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 885-5000

ATTORNEYS FOR
PLAINTIFFS/DEBTORS

# EXHIBIT "1"

900200.00001/40187502v.3

# EXHIBIT "1"

```
 1
 2                    UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF DELAWARE
 3
                                         .
 4   IN RE:                              .    Chapter 11
                                         .
 5   Midway Games, Inc., et al.,         .
                                         .
 6          Debtor(s).                   .    Bankruptcy #09-10465 (KG)
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 7
                                Wilmington, DE
 8                             January 26, 2010
                                 10:00 a.m.
 9
                         TRANSCRIPT OF MOTIONS HEARING
10                    BEFORE THE HONORABLE KEVIN GROSS
                         UNITED STATES BANKRUPTCY JUDGE
11

12   APPEARANCES:

13   For The Debtor(s):              Michael DeBaecke, Esq.
                                     Blank Rome, LLP
14                                   1201 N. Market St.-Ste. 800
                                     Wilmington, DE 19801
15
     For The Official Committee      Andrew C. Irgens, Esq.
16   of Unsecured Creditors:         Richards Layton & Finger, PA
                                     One Rodney Square
17                                   Wilmington, DE 19801

18   For Catherine Shannon:          James Newbold, Esq.
                                     Attorney Generals Office
19                                   State of Illinois
                                     100 W. Randolph St.
20                                   Chicago, IL 60601

21                                   Raymond Garza, Esq.
                                     Attorney Generals Office
22                                   State of Illinois
                                     100 W. Randolph St.
23                                   Chicago, IL 60601

24

25
```

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

732-329-0191

|   |   |   |
|---|---|---|
| 1 | For Warner Brothers Entertainment: | R. Craig Martin, Esq. Edwards Angell Palmer & Dodge 919 N. Market St.-15th Fl. Wilmington, DE 19801 |
| 4 | For David Zucker, et al.: | Michael Busenkell, Esq. Womble Carlyle Sandridge & Rice, PLLC 222 Delaware Ave. Wilmington, DE 19801 |
| 7 | (Via telephone) | |
| 8 | For The Official Committee of Unsecured Creditors: | David Zolkin, Esq. Milbank Tweed Hadley & McCloy 601 S. Figueroa St.-30th Fl. Los Angeles, CA 90017 |
| 11 | Audio Operator: | Jennifer Pasierb |
| 12 | Transcribing Firm: | Writer's Cramp, Inc. 6 Norton Rd. Monmouth Jct., NJ 08852 732-329-0191 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1  Debtor. Because the Debtor -- they're proceeding directly
2  against the Debtor, and they're proceeding against the Debtor's
3  indemnification obligations.
4         MR. NEWBOLD: Well, they're proceeding against
5  officers. The fact that there is or is not a contract of
6  indemnification, I don't think makes -- they are not entitled
7  to double recovery. But I don't think that there's anything
8  that prohibits them from doing it. I am not certain that
9  their -- well actually, I'm quite certain that the Debtors
10 will -- excuse me, that the individual employees will not
11 collect in full, even on the base wage claims. Under the Wage
12 Act, of course, there are additional penalties and fines that
13 are imposed on officers who are found to have willfully failed
14 to pay.
15        THE COURT: And this is -- just so I'm clear as well,
16 if I may, Mr. Newbold. This is a civil action; is that
17 correct? This is --
18        MR. NEWBOLD: Correct.
19        THE COURT: Okay.
20        MR. NEWBOLD: With respect to sovereign immunity,
21 it's well -- it's been held universally that states, if they
22 are sued as states, are entitled to sovereign immunity, unless
23 there is a valid abrogation, or unless they have waived their
24 immunity. In bankruptcy, we have the two recent Supreme Court
25 cases that go to the question of waiver, and we briefed those

| | |
|---|---|
| 1 | because we think the impact on the estate could be a lot worse |
| 2 | if we go to Illinois and we get whatever we get in Illinois. |
| 3 | And even though they say that those -- that the action in |
| 4 | Illinois would only involve officers and really wouldn't |
| 5 | involve the Debtor, I beg to differ on that.  We're obviously |
| 6 | going to have to pay attention to that action.  We may even |
| 7 | have to intervene, because in the first instance, they have to |
| 8 | decide that, as Your Honor correctly pointed out in your |
| 9 | questioning to Mr. Newbold, they have to decide that the |
| 10 | company, that there was a violation of the Act in the first |
| 11 | place, right?  And the company didn't violate the Act in the |
| 12 | first place. |
| 13 | So we are concerned about a ruling that we -- a |
| 14 | finding that we did.  So we would have to pay attention to |
| 15 | that.  We also would be concerned about the amounts of claims |
| 16 | that are determined in that action, because necessarily the |
| 17 | amount of claims would have to determine not only for the |
| 18 | former employees' claims and principal for unpaid vacation pay, |
| 19 | but also statutory penalties and amounts that arise from that, |
| 20 | if any. |
| 21 | There actually seems to be a difference of opinion |
| 22 | about what the employees' underlying claims are, in fact. |
| 23 | Because they say one thing, based upon their proofs of claim, |
| 24 | the Debtors have said another in their schedules.  There's no |
| 25 | argument that they have claims, there's an argument over what |

1  the proper amount of those claims would be.  It obviously has
2  an impact on the administration of the estate.  And the Debtors
3  are concerned about it, and the Creditors' Committee certainly
4  is concerned about it.
5          THE COURT:  Well, I'm troubled that the State has
6  received an assignment of these claims, so in effect, it is the
7  State of Illinois has now subjected itself to the jurisdiction
8  of the Court in pursing those claims, and at the same time, is
9  also pursuing claims against these two officers for the same --
10 essentially for the same amounts.
11         MR. DEBAECKE:  And the Debtor's estates are getting
12 whipsawed on that, Your Honor, and here's why.
13         Not only will the Debtor's estates be liable for the
14 underlying claims of the former employees at some point, in
15 terms of our priority claim and a non-priority claim portion,
16 because some of the claims are both.  They're not all priority
17 claims, but a good portion of them are priority claims that
18 will get paid a hundred cents under the plan, when we get it
19 confirmed.
20         But the estate is getting whipsawed here, because the
21 officers have claims against the estate, for what's happening
22 against them in the underlying actions.  And those claims that
23 the officers may have, as Mr. Newbold conceded today, in fact
24 he's arguing that as a basis for denying the motion to -- or
25 for granting the motion to dismiss, I think as a basis for

1  arguing wilfulness, when I had found that there was no
2  obligation to make the payments in any event?
3          MR. NEWBOLD:  The Debtor's schedules show amounts due
4  to all of these individuals; none of it is listed as
5  unliquidated, disputed or contingent.  So there may be a little
6  difference in the numbers.  I looked at a few of the claims, I
7  didn't look at all of them, but they appeared to be very close.
8  I suspect that there will be a difference in -- the employees
9  are likely to claim priority for the full amount, I don't know
10 that they're entitled to it, and I would suspect that the
11 Debtor would object on that basis.  But that doesn't go to the
12 fact that Midway admits that it owes.
13         THE COURT:  And to the extent that they admit that
14 they owe the funds, doesn't that establish that there's no
15 willful intent not to pay these individuals?
16         MR. NEWBOLD:  No, I believe so.  I see it as a
17 separate element that we will have to establish.
18         THE COURT:  I mean, I know that it's one thing not --
19 it's one thing not to be able to pay, and another thing to deny
20 that you're obligated to make a payment.  One is inability and
21 one is willfulness.  But it's more a thought out loud on my
22 part.
23         MR. NEWBOLD:  Yeah.  I don't believe that Midway is
24 denying that they owe.  Their schedule certainly don't list any
25 of the amounts owed that I have looked at -- I haven't looked

1  our claims in the -- you know, anybody who has filed proof of
2  claims.
3      THE COURT: Yes.
4      MR. HALPERN: But, you know, and one thing I want to
5  make clear, because they keep talking about everybody getting
6  their money, it's not that much of a difference, and I'll only
7  bring my claim as the example, if I may.
8      Under -- I was owed approximately $18,000 by the
9  Debtors. Of that, and the last time I saw the schedule, I
10 believe, we're close to agreeing on the amount, I'm owed only
11 approximately 6,000 or so as a priority claim. So going
12 through the bankruptcy, I myself, you know, assuming that I
13 would get a priority claim, and then a small percent, a very
14 small percentage on the unsecured claim, that I, myself, would
15 be losing out on probably 65 percent of the money that was owed
16 me when I left, and admittedly owed to me by the Debtor.
17     So I, for one, would not come close to being paid in
18 full through the bankruptcy process.
19     THE COURT: Okay. I certainly understand. There's
20 some food for thought here, and I am -- I haven't even started
21 to digest it yet, but I will, and I really do appreciate
22 Counsel's very excellent arguments, and I appreciate Counsel
23 traveling from Illinois, for what is obviously a matter of
24 great importance to your office and to --
25     MR. HALPERN: I'm sorry, Your Honor, I apologize.