## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIDWAY GAMES, INC., *et al.*, | ) | Case No. 09-10465 (KG) |
| | ) | (Jointly Administered) |
| _____Debtors._____ | ) | |
| MIDWAY GAMES, INC., *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-52288 (KG) |
| | ) | |
| JOHANNA ANONUEVO, MARCELLA | ) | |
| CASTRO, KATHLEEN DEL PIETRO, | ) | |
| JAMES GENTILE, CORY HALPERIN, | ) | |
| ANTHONY LEWELLEN, RUSSELL | ) | |
| MASON, SARAH MOSCHEA, | ) | |
| STEVEN PAWLIK, BRIAN | ) | |
| SCHULTZ, RANDY SEVERIN, | ) | |
| BETHANN SMULKOWSKI, JAMES | ) | |
| TAYLOR, JEFFREY TROUTMAN, | ) | |
| CHRISTIANA WOSS, AND | ) | |
| CATHERINE SHANNON, DIRECTOR | ) | |
| OF THE STATE OF ILLINOIS, | ) | |
| DEPARTMENT OF LABOR. | ) | |
| | ) | |
| _____Defendants._____ | ) | **Re Dkt Nos. 8, 10, 26 & 27** |

## REVISED OPINION DENYING DEFENDANTS' MOTIONS TO DISMISS[1]

Midway Games Incorporated and affiliates ("Debtors")[2] filed a complaint

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] Midway Games Inc., Midway Home Entertainment Inc., Midway Amusements Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios-Austin Inc., Midway Studios-Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., Midway Sales Company, LLC.

("Complaint") and brought this adversary action in response to an investigation conducted by the Illinois Department of Labor ("IDOL") into whether Matthew V. Booty and Ryan G. O'Desky (collectively, the "Officers"), allegedly and unlawfully withheld paid time off ("PTO") wages owed to Debtors' former employees pursuant to the Illinois Wage Payment and Collection Act (the "Wage Act"), 820 ILCS 115/5 (2010). Debtors now seek to extend the automatic stay to the Officers and seek a declaratory finding that the Officers did not violate the Wage Act. (Adversary Docket or "Adv. Dkt." 1).

Before the Court are two Motions to Dismiss this adversary proceeding (collectively, the "Motions"): (1) the Motion to Dismiss Complaint for Declaratory and Injunctive Relief or, in the Alternative, Abstain filed by defendant Catherine Shannon, Director of the State of IDOL (Adv. Dkt. 8); and (2) the Motion to Dismiss and Joinder in the IDOL Motion to Dismiss filed by defendants Johanna Anonuevo, Marcella Castro, Kathleen Del Pietro, James Gentile, Cory Halperin, Anthony Lewellen, Russell Mason, Sarah Moschea, Steven Pawlik, Brian Schultz, Randy Severin, Bethann Smukowski, James Taylor, Jeffrey Troutman, and Christiana Woss (collectively, the "Individual Defendants"). (Adv. Dkt. 10). The parties fully briefed the Motions and the Court heard oral argument on January 26, 2010. For the reasons that follow, the Motions are denied, in part, and decision deferred as to the remaining issues.

## I. <u>JURISDICTION</u>

The Court's jurisdiction rests upon 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. <u>THE RELEVANT BACKGROUND</u>

On February 12, 2009 Debtors filed voluntary petitions for Chapter 11 relief under the Bankruptcy Code (the "Code") (Adv. Dkt. 1). Prior to seeking bankruptcy relief, the Debtors decided to reduce their work force and informed 115 of their employees that their employment would be terminated as of February 14, 2009 (Adv. Dkt. 1 at 3). Since that time, some of the Debtors' employees filed claims with IDOL for unpaid PTO compensation. ("Wage Act Claims"[3]) (Adv. Dkt. 9 at 2). IDOL is now representing some of the former employees.[4] (Adv. Dkt. 9 at 2). IDOL conducted and is still pursuing an investigation of the PTO claims on behalf of the employees and threatened to file a complaint (which is attached to IDOL's Motion to Dismiss) against the Officers in an Illinois state court asserting that the Officers are personally liable under the Wage Act for unpaid PTO compensation. IDOL

---

[3] The Wage Act provides in pertinent part that: "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of the Wage Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13 (2010).

[4] Among the fifteen former employees named in this adversary proceeding, IDOL only represents eleven of the fifteen employees at this time. (Adv. Dkt. 9 at 3 n.2, Adv. Dkt. 18 at 4 n.2).

estimates that $222,554.71 is due, plus accruing statutory penalties.[5] (Adv. Dkt. 18 at 4 &

Adv. Dkt. 9 at 2). IDOL also contends that it may need to amend its complaint to add

employees to the Wage Act Claims. (Adv. Dkt. 9 at 3).

In addition to filing claims with IDOL, thirteen of the fifteen[6] former employees

timely filed proofs of claim in the Debtors' cases asserting priority status for unpaid wages

totaling $111,759.59.[7] (Adv. Dkt. 18 at 5).  The Officers filed administrative expense claims,

or in the alternative unsecured claims, with the Debtors, seeking indemnification based on

contracts, Debtors' Certificate of Incorporation, and applicable Delaware law. (Adv. Dkt.

---

[5]  In addressing penalties, the Wage Act provides:

> (b) Any employer who has been demanded by the Director of Labor
> or ordered by the court to pay wages due an employee and who shall
> fail to do so within 15 days after such demand or order is entered
> shall be liable to pay a penalty of 1% per calendar day to the
> employee for each day of delay in paying such wages to the employee
> up to an amount equal to twice the sum of unpaid wages due the
> employee. Such employer shall also be liable to the Department of
> Labor for 20% of such unpaid wages.

*    *    *

> (b-5) Penalties under this Section may be recovered in a civil action
> brought by the Director in any circuit court. In this litigation, the
> Director of Labor shall be represented by the Attorney General.

820 ILCS 115/14.

[6]  The Debtors also listed the claims of the two employees who did not file proofs of claim.
These two claims totaled $2,508.87 as priority claims and $2,048.87 as general unsecured claims.
(Adv. Dkt. 18 at 5).

[7]  Of the $111,759.59, $91,869.39 is for priority status. (Adv. Dkt. 18 at 5).

18).  Most notably, Debtors' insurance carrier does not provide coverage for the Wage Act Claims and, therefore, any costs associated with the defense and possible indemnification of the Officers in connection with the investigation and possible lawsuit initiated by IDOL and the Individual Defendants would be at the Debtors' expense. (Adv. Dkt. 18, at 5).

In response to IDOL's investigation, the Debtors filed their Complaint commencing this adversary proceeding seeking: (i) to extend the automatic stay under section 362(a) to bar IDOL and the Individual Defendants from commencing or continuing the prosecution of the Wage Act Claims; (ii) entry of a declaratory injunction under section 105(a) to enjoin IDOL and Individual Defendants from continuing or commencing the prosecution of the Wage Act Claims; and (iii) entry of a judgment declaring that the Officers did not violate the Wage Act and have no liability to IDOL or the State of Illinois. (Adv. Dkt. 1). Both IDOL and the Individual Defendants now ask the Court to dismiss the Complaint.

## III.  STANDARD OF REVIEW

IDOL and the Individual Defendants seek dismissal of all three counts in the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal for "failure to state a claim upon which relief can be granted."  As noted by the United States Court of Appeals for the Third Circuit, the standard courts apply when considering such a motion is also related to the requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. *See Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008).

5

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in a plaintiff's complaint. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993).

"In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir. 2004). *See also Phillips,* 515 F.3d at 231 (stating that the Supreme Court in *Twombly* "reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits"). All reasonable inferences are drawn in favor of the plaintiff. *Kost,* 1 F.3d at 183. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), abrogated on other grounds by, *Harlow v. Fitzgerald,* 457 U.S. 800, 814-15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Rule 8(a) of the Federal Rules of Civil Procedure, meanwhile, requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement must provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Rule 8, a complaint does not need detailed factual allegations, but does require more than labels and conclusions. A recitation of the

6

elements of a cause of action is not sufficient. *Twombly,* 550 U.S. at 555. In other words,

"Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief

. . . [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the

requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the

claim rests." *Phillips,* 515 F.3d at 232 (citing *Twombly,* 550 U.S. at 556 n. 3).

Taken together, the Third Circuit has summarized the pleading standard created by

Rule 8 and tested under Rule 12(b)(6) as follows:

> [S]tating . . . a claim requires a complaint with enough factual
> matter (taken as true) to suggest" the required element. This
> "does not impose a probability requirement at the pleading
> stage," but instead "simply calls for enough facts to raise a
> reasonable expectation that discovery will reveal evidence of"
> the necessary element.

*Phillips,* 515 F.3d at 234 (internal citations omitted).

## IV. <u>DISCUSSION</u>

The Motions are premised on five argued grounds: (1) Count I fails to state a claim

because, as a matter of law, section 362(a) does not stay actions against third party non-

debtors; (2) Count I and Count II are in direct contradiction with Count III which requests

that the Court decide the Wage Claims; (3) Count III because Debtors don't have standing

to litigate the personal liability of the Officers; (4) Sovereign immunity under the 11th

Amendment bars any lawsuit against IDOL; and (5) the Court should abstain from issuing

a ruling as to the personal liability of the Officers pursuant to 28 U.S.C. 1334(c).

The Court concludes that the central issue in determining whether to dismiss the Complaint is whether the automatic stay can be extended to third party non-debtor officers of a debtor corporation where no lawsuit has been commenced. For the reasons set forth below, the Court finds that Debtors have stated a valid claim for application of the automatic stay to protect the Officers from further investigation and commencement of any litigation relating to the Wage Act Claims. The Court's ruling obviates the need to address the other issues raised in the Motions at this time.

## I. **Ripeness**

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[6] Conceivably, whether the automatic stay extends to third party non-debtor officers of a debtor is contingent on whether this Court can extend the automatic stay to an action where a party has not filed a complaint.

In determining whether the absence of a formal judicial proceeding implicates the automatic stay, an *Abbott Laboratories* evaluation is necessary. This test "requir[es] us to evaluate both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration."[7] As for the first prong, "fitness," the Third Circuit has enumerated several factors that contribute to this determination, including "whether the issue

---

[6] *Texas v. U.S.*, 523 U.S. 296, 300 (1998)(quoting *Thomas v. Union Carbide Agrie. Prod. Co.*, 473 U.S. 568, 580-81 (1985)).

[7] *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)(setting out often-applied test for determining ripeness).

8

is purely legal (as against factual) . . . whether the claim involves uncertain and contingent events that may not occur as anticipated or at all, the extent to which further factual development would aid decision, and whether the parties to the action are sufficiently adverse."[8]

In this case, the issue of whether the automatic stay applies to third party non-debtor officers of a debtor corporation is purely a question of law.  It is not an issue of first impression in this Circuit.[9] The parties to this action are adverse and no further factual information is necessary, as the relevant facts are not in dispute. The only factor under the "fitness" requirement that weighs against deciding the issue now rather than later is whether the claim involves uncertain and contingent events.  That IDOL and the Individual Defendants have not yet filed a complaint is not an obstacle.  IDOL concedes it conducted an investigation of the Officers and continues to do so, while also attaching a copy of a proposed complaint to the Motion. (Adv. Dkt. 9 at 2-3). The Court is therefore passing certain to adjudicate whether the automatic stay extends to the Officers.

The second prong of the *Abbott Laboratories* test is the "hardship" to the parties. This

---

[8] *NE Hub Partners, L.P. v. CNG Transmission*, 239 F.3d 333, 342 (3d Cir. 2001)(citing *Philadelphia Fed'n of Teachers, American Fed'n of Teachers, Local2, AFL-CIO v. Ridge*, 150 F.3d 319 (3d Cir. 1998).

[9] *In re Continental Airlines, Inc.*, 177 B.R. 475 (D. Del. 1993); *Algemene Bank Nederland, N.V. v. Hallwood Indus., Inc.*, 133 B.R. 176 (W.D. Pa. 1991); *In re Zenith Labs., Inc.*, 104 Bankr. 659, 664-66 (D.N.J. 1989); *In re Loewen Group, Inc. Sec. Litig.*, 2001 WL 530544, at 3* (E.D. Pa. May 16, 2001).

"focuses on whether a plaintiff faces a direct and immediate dilemma, such that lack of review will put it to costly choices." *NE Hub Partners*, 239 F.3d at 342 (citing *Philadelphia Fed'n of Teachers*, 150 F.3d at 319).    Without the Court's determination of whether the automatic stay applies to the Officers, the Debtors' efforts to proceed further with their bankruptcy, with a plan of liquidation, as well as with negotiations with creditors would be severely hindered. The parties do not dispute that the Debtors have an obligation to indemnify the Officers not only for litigation costs, but also to indemnify them if a judgment is rendered against them. Debtors' insurance carrier has denied coverage for the alleged Wage Act Claims which caused the Officers to file administrative expense claims with the Debtors for indemnification. Until the Debtors know if the stay applies to the Officers, the case will stall and further exhaust the assets of the estate. Most notably, any continued investigation, including the filing of IDOL's complaint against the Officers, would deplete the Debtors' most significant asset, the remaining proceeds from the Court approved asset sales.    Furthermore, the Debtors represented to the Court both at the hearing January 26, 2010, and in their briefing, that their proposed plan will provide that they will pay in full the claims of the former employees, represented by IDOL. (Adv. Dkt. 18 at 5).    For these reasons, the Court must decide whether the Debtors' claim for the application of the automatic stay as to the Officers, even in the absence of a filed complaint, survives the Motions.

## II.  Automatic Stay

IDOL argues for dismissal of Count I in the Complaint asserting that the automatic stay is inapplicable to a third party non-debtor. To support this argument, IDOL makes two arguments. First, IDOL contends that its actions against Officers is not an action against the Debtors or property of the estate; instead, IDOL contends that any judgment entered against the Officers should be treated as a claim for allowance against the estate.  Secondly, IDOL asserts that extending the automatic stay is an injunction applicable only to a debtor.

The automatic stay is one of the "fundamental debtor protections" which is used as a shield to protect the debtor and the assets of the estate from creditors seeking to recover on pre-petition claims. H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6296.  The automatic stay is designed to "protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 998 (4th Cir.), *cert. denied,* 479 U.S. 876 1986). Consistent with congressional intent and with the fundamental purposes underlying the automatic stay, numerous federal courts have held that, under appropriate circumstances, the automatic stay may be extended beyond direct actions against the debtor to lawsuits against non-debtors.

11

In one of the leading cases on this issue, *A.H. Robins Co. v. Piccinin,* 788 F.2d 994

(4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), the court

extended the application of section 362 to non-debtor parties "when there is such identity

between the debtor and the third party defendant that the debtor may be said to be the real

party defendant and that a judgment against the third party defendant will in effect be a

judgment against the debtor." *Id.* at 999.  The court reasoned that when the automatic stay

is not extended, such a situation defeats the very purpose and intent of the Code. Similarly,

in *Sudbury, Inc. v. H. Escott*, 140 B.R. 461 (Bankr. N.D. Ohio 1992), the court enjoined

fraud actions against present and former officers and directors of a corporate debtor until

completion of the reorganization effort because the debtor's reorganization efforts would

suffer irreparable harm if the action continued and also because "plaintiff's actions would

violate the spirit . . . of section 362 of the Bankruptcy Code." *Id.* at 464.

Courts in this Circuit and others have held that while the automatic stay ordinarily

applies only to actions against the debtor itself, it is properly extended to actions against non-

debtors where an "identity of interest" exists between the debtor and non-debtor defendant

such that the debtor is the real party defendant and the litigation will directly affect the debtor

and, more specifically, the debtor's assets or its ability to pursue a successful plan of

12

reorganization or liquidation under Chapter 11.[10]    The court in *Continental Airlines*, considered four factors in whether to apply the automatic stay to a debtor's directors and officers: (1) the involvement of the directors and officer in the reorganization process; (2) the burden imposed on the directors and officers if the litigation is not stayed; (3) the likelihood that the litigation would detract from the officers and directors' efforts to reorganize; and (4) whether the debtor's assets would likely be depleted as a result of the litigation. *Id.* at 481.

On the basis of these authorities, the Court finds that the Debtors have stated a valid claim to apply the automatic stay to bar further investigation and commencement of a lawsuit by IDOL and the Individual Defendants for the Wage Act Claims. The *Continental Airlines* factors applied to the facts of this case would mandate application of the stay to the Officers. In this case, the allegations made by IDOL reveal that the Debtors are the real target of the alleged Wage Act Claims. Specifically, the investigatory actions and proposed lawsuit by IDOL and the Individual Defendants are an effort to circumvent the automatic stay. As represented in the Complaint, the Wage Act Claims are not covered by Debtors' insurance.

---

[10] *In re Continental Airlines*, 177 B.R. 475 (D. Del. 1993) (affirming bankruptcy court on finding that the automatic stay applied to certain actions against non-debtor defendants because, among other things, bankruptcy court had found identity of interest between debtor and non-debtor defendants); *See also In re Loewen Group, Inc., Sec. Litig.*, 2001 WL 530544, at *3 (E.D. Pa. May 16, 2001) (applying the stay to Debtor's officers and directors who were non-debtor defendants in litigation to avoid Debtor from engaging in "detailed and burdensome discovery")*; In re American Film Technologies, Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (finding that the automatic stay applied to wrongful discharge action against present director of the debtor corporation).

(Adv. Dkt. 1 at 5).  The absence of insurance means Debtors will be forced to shoulder indemnity obligations to the Officers thereby directly impacting Debtors' remaining assets from the Court-approved sales.  Additionally, assuming that a court entered a judgment against the Officers, Debtors would also endure the costs of statutory penalties associated with the Wage Act.[11]  The Court also finds the investigation and proposed litigation unnecessary.  In fact, most of the former employees will receive full payment of their claims if they decide not to pursue litigation at this time. The Debtors made representations in their briefs and at oral argument that the claims filed by or on behalf of thirteen former employees will receive full payment. (Adv. Dkt. 18 at 5).

### III.  Remaining Claims

The Court is not addressing the other issues raised in the Motions, i.e., the dismissal of claims seeking adjudication of the Wage Act claims by the Court and whether sovereign immunity is implicated.  The concept of judicial restraint compels the Court to decide only those issues necessary to grant effective relief.  The ruling that the stay applies to the Officers eliminates the need for a trial here, at least until the Debtors' assurance of payment of PTO bears fruit.  The Court's exercise of judicial restraint is strongly encouraged, particularly because IDOL has raised the constitutional issue of sovereign immunity. *See Three Affiliated Tribes of Fort Berthold Reservation v. World Engineering, P.C.*, 467 U.S. 138, 157 (1984): "It is a fundamental rule of judicial restraint that this Court will not reach constitutional

---

[11] *See supra* Part II at 3 at n.5.

questions in advance of the necessity of deciding them**."** Innumerable cases hold likewise. Accordingly, the Court's decision will rest upon the claim for the automatic stay which avoids the need to address sovereign immunity.

## CONCLUSION

The Court finds that Debtors have stated a valid claim for extending the automatic stay of section 362 of the Code to the Officers and thereby to render any investigation and lawsuit filed by IDOL and the Individual Defendants a violation of the Bankruptcy Code. The Court will issue an Order consistent with this opinion.

Dated: June 4, 2010

KEVIN GROSS, U.S.B.J.